METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,

v.

Joseph SULLIVAN, Jeanne M. Tundis,
Kathleen A. Sullivan and Michael
Sullivan, Defendants.

No. 94–CV–4196.

United States District Court,
E.D. New York.

Sept. 5, 1995.

Alan E. Lazarescu, Metropolitan Life Insurance Company, New York City (Lawrence Wolff, of counsel), for plaintiff.

Joseph Sullivan, Albany, NY, pro se.

Thomas F. Collins, Plainview, NY, for Jeanne M. Tundis, Kathleen A. Sullivan, and Michael Sullivan.

SPATT, District Judge:

Metropolitan Life Insurance Company ("MetLife") has commenced this action under the Federal Employees' Group Life Insurance Act, ("FEGLIA") as amended, 5 U.S.C. §§ 8701–8716 (1988), seeking a court order directing MetLife to pay life insurance benefits which accrued under the life insurance policy of John M. Sullivan's ("the Insured") to the Insured's children, the defendants Jeanne M. Tundis (formerly Sullivan) ("Jeanne"), Kathleen A. Sullivan ("Kathleen"), and Michael J. Sullivan ("Michael"). The Insured's children were designated beneficiaries of the MetLife policy by the Insured on December 3, 1987. The Insured died on July 17, 1993.

MetLife's request to pay the benefits to the Insured's children is opposed by the Insured's brother, the defendant Joseph P. Sullivan ("Joseph"), who claims that he is entitled to the life insurance proceeds pursuant to a Designation of Beneficiary Form execut-ed by him on July 15, 1993, under a power of attorney allegedly bestowed upon him by the Insured four days before his death. MetLife now seeks summary judgment on the complaint in its favor pursuant to Fed.R.Civ.Pro. 56(a). Joseph Sullivan responded to Met-Life's motion by filing a Cross Motion for Summary Judgment in his favor.

MetLife rejected Joseph's claim maintaining that the Designation of Beneficiary Form executed by Joseph is invalid because it fails to comply with the requirements of the FEG-LIA.

### Background

At the time of his death, John M. Sullivan was employed by the United States Postal Service. As a condition of his employment, he was covered by MetLife Group Life Insurance Policy No. 17000–G (the "MetLife Policy") which is governed by the provisions of the FEGLIA. On December 3, 1987, the Insured named his children, Jeanne, Kathleen and Michael as beneficiaries of the Met-Life Policy, pursuant to a duly executed Designation of Beneficiary Form. According to the terms of the Designation of Beneficiary Form, Michael was to receive 50% of the proceeds while Jeanne and Kathleen each would receive 25%. The total value of the proceeds at issue is $216,000.

On July 13, 1993, four days before his death, the Insured allegedly executed a general power of attorney naming his brother, Joseph, as attorney-in-fact in accordance with New York General Obligations Law § 5–1501. On July 15, 1993, pursuant to the power of attorney, Joseph executed a second Designation of Beneficiary Form on behalf of the Insured naming himself as the exclusive beneficiary of the MetLife Policy.

MetLife filed its complaint on September 2, 1994 because of the controversy between the defendants over the proceeds. MetLife seeks: (1) a declaration that the July 15, 1993 Designation of Beneficiary Form executed by Joseph in favor of himself is without effect as it violates the requirements of the FEGLIA; (2) a declaration that Jeanne, Kathleen and Michael are the proper and valid beneficiaries of the MetLife Policy; (3) a declaration that MetLife has no further

liability as a result of the Insured's death beyond payment of the proceeds; and (4) a declaration that after payment of the proceeds to Jeanne, Kathleen and Michael, MetLife is discharged of any and all liability resulting from the Insured's death.

While the legitimacy of Joseph's power of attorney is disputed by the plaintiff and Joseph's nephews and nieces, MetLife assumes the validity of Joseph's appointment as attorney-in-fact under the power of attorney, for the purpose of its summary judgment motion.

## Present Motion

MetLife moves for summary judgment in its favor on the complaint so that it may distribute the proceeds of the Insured's life insurance policy as expeditiously as possible. It argues that even if the power of attorney executed in favor of Joseph is valid, the Designation of Beneficiary Form which he subsequently filed, naming himself as beneficiary of the MetLife policy, is unenforceable as a matter of law. Specifically, MetLife maintains that the FEGLIA provides that only the employee himself may designate the beneficiaries of a life insurance policy under the Act, and that designations by third parties on behalf of the insured are void. Moreover, to the extent that the second Beneficiary Form might have been otherwise enforceable under New York law because it does not directly contradict any explicit provision of the FEGLIA, MetLife contends that such enforcement is preempted by the FEGLIA.

MetLife's motion is opposed only by Joseph Sullivan. He contends that MetLife's interpretation of the provisions of the FEGLIA is overbroad. Joseph argues that the FEGLIA does not expressly prohibit a change of beneficiary by a third party appointed pursuant to a power of attorney. Therefore, according to Joseph, the federal statute has no application here. Moreover, he states that the change in beneficiaries is consistent with New York General Obligations Law § 5–1502F. Accordingly, Joseph argues that his designation of himself as beneficiary of his brother's life insurance policy is valid.

In addition to responding to MetLife's motion, Joseph Sullivan has also filed a cross motion for summary judgment in his favor, arguing that the July 15, 1993 Designation of Beneficiary Form is enforceable because he was acting pursuant to a valid power of attorney. Joseph also moves: (1) to strike three of MetLife's supporting affidavits on the ground that they were not properly verified; (2) to strike portions of the Kathleen's affidavit in that the allegations contained therein did not constitute "fact"; and (3) to strike portions of the Answer filed by the other defendants for the alleged failure to serve in a timely manner.

## Discussion

### 1. The Standard For Summary Judgment

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Liscio v. Warren*, 901 F.2d 274, 276 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)); *see also National Union Fire Ins. Co. v. Turtur*, 892

F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990).

■ However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Western World,* 922 F.2d at 121. If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See United National,* 988 F.2d at 354–55; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution". *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

### 2. *Designation of Beneficiaries under the FEGLIA*

■ Designation of beneficiaries under the FEGLIA is governed by 5 U.S.C. § 8705(a) which provides in relevant part that:

> The amount of group life insurance ... in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
>> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office.... For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

Section 8705(a) requires strict technical compliance with the requirements of the statute. *Metropolitan Life Ins. v. Manning,* 568 F.2d 922, 926 (2d Cir.1977); *see also, Huff v. Metropolitan Life Ins.,* 675 F.2d 119, 121–22 (6th Cir.1982). Strict construction of section 8705(a) is based in part on the plain meaning of the statute which, as noted above, provides that a "change ... of beneficiary in a will or other document not ... executed [in accordance with this section] has no force or effect."

This rule of strict construction is also based on congressional intent to establish an inflexible rule that a beneficiary be named in strict accordance with the statute irrespective of the equities of a particular case. *Manning,* 568 F.2d at 926. This intent is demonstrated by the legislative history of the statute. Prior to the 1966 congressional amendment to what is now section 8705(a), the "cases are legion" with examples of decisions in which the courts "brushed aside" the legal technicalities of section 8705(a) in order to effectuate the "manifest intention" of insured. *See, e.g., Sears v. Austin,* 292 F.2d 690 (9th Cir.1961) *cert. denied,* 368 U.S. 929, 82 S.Ct. 365, 7 L.Ed.2d 192 (1961) (enforcing a designation of beneficiary made in a valid will rather than by compliance with requirements of the FEGLIA); *United States v. Pahmer,* 238 F.2d 431 (2d Cir.1956), *cert. denied,* 352 U.S. 1026, 77 S.Ct. 592, 1 L.Ed.2d 597 (1957) (enforcing a change of beneficiary by a will not yet admitted to probate in a similar case under the regulations of the Veterans' Administration).

In response to the development of this "manifest intention" doctrine, as handed down in *Sears,* Congress amended this section to add the last sentence, "[f]or this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect." Pub.L. No. 89–373, 80 Stat. 78 (1966). The Senate Report addressing the amendment notes that Pub.L. 89–373 rewrote section 8705(a) "to state clearly that the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary unless the designation has been properly received by the employing office." Senate Rep. No. 1064, 89th Cong., 2d Sess. (1966) *quoted in,* 2 U.S.Code Cong. & Admin.News 2070, at 2071 (1966); *see also Manning* 568 F.2d at 926. The purpose of the amendment was to avoid administrative difficulties for the Civil Service Commission and insurance companies, and undue delay in the payment of benefits. *Id.*

These strict construction requirements are echoed by the relevant regulations issued by

the Office of Personnel Management ("OPM") interpreting the statute, to which a reviewing court is obligated to afford substantial deference. *See Zenith Radio Corp. v. United States,* 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445–46, 57 L.Ed.2d 337 (1978). According to 5 U.S.C. § 8716(a), OPM is given the discretion to "prescribe regulations necessary to carry out the purposes of this [statute]." Pursuant to this mandate, OPM has reiterated the requirements of section 8705(a) by promulgating 5 C.F.R. § 870.902(b) which provides that "[a] change or cancellation of beneficiary in a last will or testament, or in any other document not witnessed and filed as required by this part, shall not have any force or effect."

Consistent with both section 8705(a) and the Second Circuit's decision in *Manning,* the "any other document" term contained in the statute and regulation is further clarified by an OPM Memorandum dated March 17, 1989 and an OPM Federal Personnel Management System Letter dated July 8, 1991, both of which specifically provide that Designation of Beneficiary Forms may not be filed on behalf of an employee by a third party who has been granted power of attorney to manage the employee's affairs. As the courts have often repeated, "considerable respect is due the interpretation given [a] statute by the officers or agency." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 559–570, 100 S.Ct. 790, 797, 793–799, 63 L.Ed.2d 22 (1982) (recognizing that where a statute and official regulation, such as the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* and Regulation Z, 12 C.F.R. 226.8, leave gaps in the regulatory scheme, it is appropriate for the courts to defer to interpretation of the proper regulatory agency and its staff).

3. *Preemption under the FEGLIA*

◼ To promote uniform application of the FEGLIA's change of beneficiary requirements, Congress has incorporated a preemption clause into the FEGLIA providing that,

[t]he provisions of any contract under [the FEGLIA] which relate to the nature or extent of the coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of

any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1) (1988). This provision has been consistently applied by the federal appellate courts to preempt state court divorce decrees which preclude changes in the designation of beneficiaries in contradiction of section 8705(a). *See, e.g., Metropolitan Life Ins. v. Christ,* 979 F.2d 575 (7th Cir. 1992) (holding that a divorce decree requiring that an insured's children remain beneficiaries of a FEGLIA governed insurance policy is preempted because it limited an insured's rights to designate a beneficiary under § 8705(a)); *Dean v. Johnson,* 881 F.2d 948 (10th Cir.1989) (same). While *Christ* and *Dean* are distinguishable in the sense that they addressed a state law limitation on an insured's ability to change his designated beneficiary, rather than the mode of making the change, *e.g.,* through a power of attorney, the Seventh Circuit in *Christ* recognized that section 8709(d)(1) "broadly preempts any state law that is inconsistent with the FEGLIA master policy." *Christ* at 579 (the term "relates to" as its used in § 8709(d)(1) is "broad," meaning "to stand in some relation; to have bearing or concern.") (internal citations omitted). For the FEGLIA to preempt state law, the state law need not specifically address the insurance plan at issue in that the effect of the state law may be only indirect. *Id.*

◼ MetLife makes two points in support of its summary judgment motion: (1) that Joseph's execution of the Designation of Beneficiary Form in favor of himself is invalid because it violates the express provisions of the FEGLIA; and (2) that even if the execution of the Designation of Beneficiary Form were enforceable, the Designation is preempted under the FEGLIA. MetLife first argues that even if this court assumes that the power of attorney granted in favor of Joseph Sullivan is enforceable, Joseph's naming himself beneficiary of his brother's insurance policy is nevertheless invalid because it fails to comply with the literal requirements section 8705(a). As discussed

above, section 8705(a) provides that the amount of group life insurance due upon the death of an employee shall be paid "to the beneficiary or beneficiaries *designated by the employee* in a signed and witnessed writing.... For this purpose, a designation, change or cancellation of a beneficiary in a will or other document not so executed and filed has *no* force or effect." Since the change in the beneficiary of the Insured's MetLife Policy was not designated by the employee, in this case John Sullivan, the change is invalid. Furthermore, the OPM's March 17, 1989 Memorandum and July 8, 1991 Federal Management System Letter 870–56 specifically provide that a change in beneficiaries made by a third party acting under a power of attorney is invalid. The Court agrees with this interpretation.

Joseph dismisses the OPM's interpretation of the statute, as expressed in OPM's above mentioned interpretive memoranda, as "arbitrary." He reasons that these policies deserve no deference as they directly contradict the OPM's official regulation, 5 C.F.R. § 870.902(e), which provides that an insured's right to change the beneficiary of his insurance policy cannot be waived or restricted.

After reviewing the FEGLIA's statutory framework, legislative history and relevant case law, this court is not persuaded by Joseph's arguments. Section 8705(a) on its face plainly requires that changes in beneficiaries must done by the employee. While the courts originally interpreted the FEGLIA to allow non compliance with the statutory requirements to what is now section 8705(a) to achieve an employee's "manifest intention," this reasoning was overturned by Congress when it amended the FEGLIA to include a provision that any change in beneficiaries not in compliance with section 8705(a) "has no force or effect." Consistent with these provisions, OPM has issued several interpretive releases, which explicitly provide that changes in beneficiaries made by third parties acting under a valid power of attorney are invalid. Moreover, the courts interpreting the FEGLIA have held that section 8705(a) should be construed broadly to promote efficiency and expedient payment of

proceeds and preempt any conflicting state law. Accordingly, this Court determines as a matter of law that the Designation of Beneficiary Form filed by Joseph Sullivan is "without force or effect" under 5 U.S.C. § 8705(a).

Conversely, Joseph maintains not only that MetLife's summary judgment motion is fatally deficient, but that he is entitled to summary judgment in his favor. He argues that his designation of himself as beneficiary of the MetLife Policy is enforceable because the underlying power of appointment is valid under state law. According to New York General Obligations Law § 5–1502F(2), execution of a short form power of attorney authorizes the agent "to designate the beneficiary of any such contract of insurance, provided however, that the agent himself cannot be such beneficiary unless the agent is spouse, child, grandchild, parent, brother or sister of the principal...." Joseph further contends that the FEGLIA does not explicitly address what actions a third party acting under a power of attorney may undertake. Therefore, he states compliance with section 8705(a) and New York General Obligations Law § 5–1502F(2) are not mutually exclusive. Joseph supports his argument by maintaining that this case is based on "insurance regulation" protected under the McCarran–Ferguson Act, 15 U.S.C. § 1012 (1988), which protects state laws enacted "for the purpose of regulating insurance" from "federal preemption." *Id.*

MetLife disputes Joseph's reasoning, and argues that to the degree that Joseph's designation of himself as beneficiary might have otherwise been lawful under New York law providing for powers of appointment, the New York law is preempted by the FEGLIA.

Again, the Court is unpersuaded by Joseph's arguments. His reliance on New York law is insufficient to support his motion for summary judgment, nor can it defeat MetLife's motion for summary judgment, for two reasons. *First,* Joseph misreads section 8705(a), which explicitly requires that all designations of beneficiaries must be made by the employee himself. Therefore, inasmuch as New York law might allow for a change of beneficiaries by a third party acting under a power of attorney, the New York law contra-

dicts the FEGLIA and, in accordance with section 8709(d)(1), is preempted. This conclusion is not only consistent with the statute, but it has been the policy of the OPM at least since March 17, 1989 when the agency issued its memorandum expressly providing that Designation of Beneficiaries may not be made by third parties acting under power of attorney on behalf of an insured employee.

Moreover, preemption of Joseph's action under the power of attorney is consistent with congressional policy underlying the FEGLIA. The Senate Report provides that the purpose of the FEGLIA is to promote efficient maintenance of insurance policies and prompt payment of proceeds. Enforcing Joseph's designation of himself as beneficiary of his brother's life insurance policy, under a power of attorney, two days before his brother's death, flies in the face of this policy. Upholding the designation would create precedent requiring the federal courts to entertain all claims regarding the validity of the powers of appointment, by way of powers of attorney, underlying similar beneficiary designations. Indeed, in the first paragraph of his response to MetLife's motion, Joseph argues as much. Multiplying state law governing such powers of attorneys by fifty could ultimately bog down the federal courts with cases interpreting state law, thereby slowing down the process of paying out the insurance proceeds that the FEGLIA was designed to expedite.

*Second,* the McCarran–Ferguson Act is inapplicable to the instant case. The McCarran–Ferguson Act, 15 U.S.C. § 1012 applies to protect state statutes that "regulate the business of insurance." *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). Three criteria are used to determine whether a practice falls under the rubric of regulating the "business of insurance": (1) whether the practice has the effect of transferring or spreading policyholder risk: (2) whether the practice is an integral part of the policy relationship between the insurer and the insured: and (3) whether the practice is limited to entities within the industry. *Union Labor Life Ins. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982). New York General Obligations Law § 5–1502F does not address any of the three prongs of this test. Allowing a third party to designate insurance beneficiaries under a power of attorney does not spread policyholder risk. Nor does this practice affect the relationship between the insurer and the insured or limit itself to entities in the insurance industry.

Considering, the aforementioned factors together compels the conclusion that, even assuming Joseph was acting pursuant to an otherwise valid power of attorney, his designation of himself as beneficiary of his brother's life insurance policy is preempted by the FEGLIA.

Based on the above reasoning, MetLife is entitled to summary judgment on the complaint as a matter of law. Joseph Sullivan's motion to strike certain documents is rendered moot and therefore no decision is required.

For the reasons stated above, it is hereby

**ORDERED,** that Plaintiff–MetLife's motion for summary judgment is GRANTED and Joseph Sullivan's cross motion for summary judgment is DENIED; it is further

**ORDERED,** that the July 15, 1993, Designation of Beneficiary Form executed by Joseph P. Sullivan, in favor of himself is declared to be of no force or effect under the FEGLIA, 5 U.S.C. § 8705(a); it is further

**ORDERED,** that the Insured, John M. Sullivan's children, defendants Jeanne M. Tundis, Kathleen A. Sullivan and Michael J. Sullivan, are the proper beneficiaries of the FEGLIA policy in accordance with Designation of Beneficiaries Form executed on December 3, 1987, giving Michael J. Sullivan 50% of the proceeds and Jeanne M. Tundis and Kathleen A. Sullivan 25% each; and it is further

**ORDERED,** that the plaintiff, MetLife, is directed to pay the proceeds of the insurance policy on the life of John M. Sullivan as follows: to Michael J. Sullivan, 50% of the proceeds; to Jeanne M. Tundis, 25% of the proceeds; and to Kathleen A. Sullivan, 25% of the proceeds within twenty days after entry of the judgment in this case; and it is further

**ORDERED,** that upon payment of the aforementioned proceeds to Jeanne M. Tundis, Kathleen A. Sullivan and Michael J. Sullivan, MetLife is discharged of any and all liability as a result of the death of John M. Sullivan; and it is further

**ORDERED,** that the Clerk of the Court is directed to enter judgment in accordance with this Order.

**SO ORDERED.**