**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 31 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

METROPOLITAN LIFE
INSURANCE COMPANY,

      Plaintiff,

v.

SHIRLEY BUSH,

      Defendant-Cross
      Claimant-Appellant,

v.

PHYLLIS BREMER;
SHIRLEY GUTHRIE;
and VICTORIA VAN HEIDEN,

      Defendants-Cross Claim
      Defendants-Appellees.

No. 97-1172

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-WY-2344-AJ)

John R. Riley of Montgomery Little & McGrew, P.C., Englewood, Colorado, for
Defendant-Appellant.

Robert G. Hoghaug, Denver, Colorado, for Defendants-Appellees.

---

Before **ANDERSON** , **EBEL** , and **HENRY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

---

Shirley Bush appeals the district court's order granting summary judgment against her and in favor of the appellees Phyllis Bremer, Shirley Guthrie, and Victoria Van Heiden. The court rejected Ms. Bush's claim that she was the sole beneficiary of a life insurance policy issued to her friend Patricia Moore and concluded that Ms. Bush, Ms. Bremer, Ms. Guthrie, and Ms. Van Heiden were each entitled to twenty-five percent of the policy's proceeds. See Metropolitan Life Ins. Co. v. Bremer , 955 F. Supp. 1283 (D. Colo. 1997). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Metropolitan Life Insurance Company filed this case as an interpleader action seeking a declaratory judgment regarding entitlement to proceeds of a $52,000 life insurance policy that it had issued through the Federal Employees Group Life Insurance Program for Patricia Moore. After Metropolitan Life

2

deposited the proceeds of the policy, the district court dismissed it from the case.

Ms. Moore worked at the Federal Aviation Administration's (FAA's) Denver Flight Service Station in Englewood, Colorado. After contracting lung cancer, Ms. Moore, who had no immediate family, executed the two designation of beneficiary forms that are at issue here. First, on June 2, 1995, she executed a form naming Ms. Bush as the sole beneficiary of the Metropolitan Life policy. The FAA's regional office in Renton, Washington received that form on June 19, 1995. On June 20, 1995, Ms. Moore executed a second designation of beneficiary form. The second form named four of Ms. Moore's friends as co-beneficiaries: Ms. Bush, Phyllis Bremer, Shirley Guthrie, and Victoria Van Heiden, each of them to receive twenty-five percent of the proceeds.

Ms. Moore executed this second designation of beneficiary form at her home. Two people signed the form as witnesses: Teala Sparks, the administrative officer at the Denver Flight Service Station, and another FAA employee. Ms. Sparks was responsible for providing employees with information about benefits, including life insurance policies.

Ms. Moore died at 1:00 a.m. on June 21, 1995. On the same day, Ms. Sparks faxed and mailed the June 20, 1995 designation of beneficiary form to the FAA's regional office in Renton, Washington. The regional office received the

original form on June 23, 1995. [1]

After Ms. Moore's death, Ms. Bush claimed all of the proceeds of the life insurance policy under the designation of beneficiary form that Ms. Moore had executed on June 2, 1995. Ms. Bremer, Ms. Guthrie and Ms. Van Heiden each claimed twenty five percent of the proceeds pursuant to the form executed on June 20, 1995. The Office of Federal Employees Group Life Insurance (OFEGLI) initially indicated that the June 20, 1995 form was not valid because Ms. Moore's "employing office" had not received it prior to her death. See Aplt's App. at 51. However, the OFEGLI subsequently sought guidance from the United States Office of Personnel Management (OPM). OPM concluded that the FAA's Denver Flight Service Station in Englewood, Colorado could be considered Ms. Moore's "employing office," as that term is used in 5 U.S.C. § 8705 and accompanying regulations. OPM relied on Fair v. Moore, 397 A. 2d 976 (D.C. Ct. App. 1979), a case in which the court held that the term "employing office" was broad enough to include the personnel office of the agency in which the

---

[1] In the district court proceedings, Ms. Bush asserted that even though Ms. Sparks faxed the June 20, 1995 designation of beneficiary form to the Renton office on the day that Ms. Moore died, she did not do so until some time after 1:00 a.m. (the hour of Ms. Moore's death). See Aplt's App. at 103-06. The appellees have not disputed this contention. As a result, our discussion is premised on the parties' agreement that the Renton office received neither the faxed copy nor the original of the June 20, 1995 designation of beneficiary form until after Ms. Moore's death.

4

insured worked.    See Aplt's App. at 54.  OFEGLI informed the parties that, in the event that they could not reach a settlement, it would take the position that OPM's determination should control and that, as a result, the proceeds of Ms. Moore's policy should be distributed in accordance with the June 20, 1995 designation of beneficiary form.

In the district court proceedings, the parties filed cross-motions for summary judgment.  The district court granted summary judgment in favor of Ms. Bremer, Ms. Guthrie, and Ms. Van Heiden.  In support of its decision, the court noted that Ms. Sparks was the administrative officer responsible for personnel matters at the Denver Flight Service Station where Ms. Moore worked.  Because it was a routine practice for FAA employees to submit forms concerning benefits to personnel officers at their place of employment and to rely on those local personnel officers to transmit the forms to the regional benefits office, the court said, Ms. Moore had completed all of the requirements for changing the beneficiaries of her life insurance policy prior to her death.  Even though the applicable statute and regulation required receipt of the designation of beneficiary form by the decedent's "employing office" prior to her death,    see 5 U.S.C. § 8705; 5 C.F.R. § 870.104 (1995), the court concluded that the determination of OPM and OFEGLI that Ms. Sparks was "an extension" of the FAA's regional office in Renton, Washington was "reasonable and should be upheld."    See

5

Metropolitan Life, 955 F. Supp. at 1288. As a result, the court stated, the designation of beneficiary form signed by Ms. Sparks on June 20, 1995 was valid.

## II. DISCUSSION

In reviewing the grant or denial of summary judgment, we apply the same standard as the district court under Fed. R. Civ. P. 56 and consider legal questions de novo. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir.), cert denied, 118 S. Ct. 342 (1997); MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1117-18 (10th Cir. 1991). Summary judgment is warranted if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Seymore, 111 F.3d at 797.

In this appeal, we must resolve the legal question of whether the Denver Flight Service Station where Ms. Moore worked at the time of her death was her "employing office" under the applicable statute and regulation. [2] We begin by

---

[2] In its order granting summary judgment to the appellees, the district court characterized Ms. Sparks as a "representative" of the Denver Flight Service Station. See Aplt's App. at 125. Under the district court's reasoning, receipt of the designation of beneficiary form by a representative of Ms. Moore's "employing office" constituted receipt by her "employing office," as required by § 8705, even though the document was delivered to Ms. Sparks at Ms. Moore's home. Ms. Bush has not challenged this reasoning on appeal, and, as a result, we will not consider it.

considering the applicable provisions of the Federal Employees Group Life Insurance Act (FEGLIA), 5 U.S.C. §§ 8701-16.

FEGLIA establishes a life insurance program for federal employees. See Dean v. Johnson, 881 F.2d 948 (10th Cir. 1989). Section 8705 of FEGLIA provides for the payment of proceeds of life insurance policies and establishes requirements for designating beneficiaries:

> The amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office . . . . [A] designation, change, or cancellation of beneficiary . . . not so executed and filed has no force or effect.

5 U.S.C. § 8705(a) (emphasis added).

Several of our sister circuits have discussed the legislative history underlying § 8705. See, e.g., Ward v. Stratton, 988 F.2d 65, 67 (8th Cir. 1993); O'Neal v. Gonzalez, 839 F.2d 1437, 1440 (11th Cir. 1988). Congress added the last sentence quoted above ("[A] designation . . . not so executed . . . .") in 1966. Prior to that amendment, courts often attempted to discern the insured's "manifest intent" in deciding who was the proper beneficiary. In determining this "manifest intent," some of these courts did not require strict compliance with the statute if

7

some other evidence established that the insured intended to designate a particular person as a beneficiary. For example, in Sears v. Austin, 292 F.2d 690 (9th Cir. 1961), the Ninth Circuit held that the designation of a beneficiary in a holographic will was sufficient to entitle the designated beneficiary to the proceeds of a FEGLIA policy. The 1966 amendment foreclosed such inquiries into manifest intent:

> The equities in Sears may have prompted the court of appeals to disregard the civil service regulation and the general intent of the statute in order to comply with the insured's wishes, but the precedent established in that case could, if generally followed, result in administrative difficulties for the Civil Service Commission and the insurance companies and, more important, seriously delay paying insurance benefits to survivors of Federal employees. "To clarify Congress' intent, [the 1966 amendment to section 8705] rewrites section 4 to state clearly that the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary unless the designation has been properly received in the employing office or by the Civil Service Commission."

Ward, 988 F.2d at 67 (quoting S. Rep. No. 1064, 89th Cong., 2d Sess. 2 (1966), reprinted in 2 U.S.C.C.A.N. 2070, 2071).

Following the 1966 amendment, a number of courts have rejected claims for the proceeds of federal employees' life insurance policies brought by individuals seeking to recover by means of some document that did not meet the requirements of § 8705. See, e.g., Ward, 988 F.2d at 66-68 (rejecting claim of

8

insured's wife based on a letter that had not been filed with the employing agency and concluding that the beneficiary named in the form that had been filed was entitled to the proceeds); O'Neal , 839 F.2d at 1439-40 (11th Cir. 1988) (concluding that insured's designation of his aunt, which complied with the statute, could not be modified by contractual agreement that he had with his girlfriend to name her as the beneficiary).   These courts have strictly construed the statutory requirements for designating beneficiaries.   See Brewer v. Zawrotny , 978 F.2d 1204, 1206 n.2 (10th Cir. 1992) (adopting strict construction of the Servicemen's Group Life Insurance Act, 38 U.S.C. §§ 1965-1979, and citing cases adopting strict construction of FEGLIA).

Although § 8705 provides that only those beneficiaries designated in a form "received before death in the employing office" are entitled to the proceeds of FEGLIA policies, the statute does not define the term "employing office." However, at the time of Ms. Moore's death, an accompanying regulation, supplied the following definition:

> Employing office   means the office of the agency or retirement system to which jurisdiction and responsibility for life insurance actions have been delegated.

5 C.F.R. § 870.104 (1995). [3]

---

[3]   Section 870.104 was amended and renumbered in 1997. The new regulation defines "employing office" as "the agency office or retirement system

In this appeal, Ms. Bush argues that the FAA's Denver Flight Service Station in Englewood, Colorado was not Ms. Moore's "employing office" because it is the FAA's regional office in Renton, Washington that has "jurisdiction and responsibility for life insurance actions." See 5 C.F.R. § 870.104 (1995). Citing decisions concluding that the statutory requirements for designating beneficiaries under 5 U.S.C. § 8705 should be strictly construed and that the intent of the decedent may not be invoked to excuse a failure to comply with these requirements, Ms. Bush argues that Ms. Moore's "employing office" did not receive the June 20, 1995 designation of beneficiary form prior to her death, and that, as a result, the prior designation of beneficiary form should control.

In the district court proceedings, Ms. Bush cited a November 3, 1995, letter from the Acting Air Manager of the Denver Flight Service Station in support of her contention that the FAA's regional office in Renton was Ms. Moore's "employing office." See Aplt's App at 41, 56-57. That letter describes the Washington office as "[o]ur regional benefits office." Id. at 56. Ms. Bush also contended that the fact that Ms. Sparks sent the designation of beneficiary form to the Renton office after receiving it indicated that the Renton office was Ms.

_____

office that has responsibility for life insurance actions." See 5 C.F.R. § 870.101 (1998). With regard to the question at issue here--whether the Denver Flight Service Station is Ms. Moore's "employing office"--this amendment does not affect our analysis.

10

Moore's "employing office." See id. at 42 ("There is no reason to provide the change in beneficiary information to Renton unless Renton is the office where life insurance actions [have] been delegated."). In her appellate brief, Ms. Bush adds that the Denver Flight Service Station cannot be considered an "extension" of the Renton office, because § 8705 and the accompanying regulations do not mention the concept of an "extension" of an "employing office." Aplt's Opening Br. at 9.

We agree with Ms. Bush that the applicable regulations do not discuss the concept of an "extension" of an "employing office." Moreover, if such a concept were to be broadly applied, many government offices could be regarded as extensions of other offices, undermining statutory and regulatory requirements for filing documents in particular locations. Nevertheless, we are persuaded in this case that the Denver Flight Service Station, where Ms. Moore actually worked, may be considered her "employing office" under 5 U.S.C. § 8705 and 5 C.F.R. § 870.104

In support of this conclusion, we note that although § 870.104 states that an employing office is one with "jurisdiction and responsibility for life insurance actions," it explains neither what constitutes a "life insurance action" nor what kind of "jurisdiction and responsibility" an office must exercise over these actions in order to meet the definition of an "employing office." Although this definition might refer to responsibility for determining the existence and scope of life

insurance coverage and the identification of particular beneficiaries, we can discern no reason from the terms of the regulation why "jurisdiction and responsibility for life insurance actions" might not also refer to the responsibility to perform various ministerial acts–like distributing information and forms to employees and collecting required forms once employees have reviewed and executed them. [4]

Moreover, the wording of the designation of beneficiary form that Ms. Moore signed undermines Ms. Bush's argument for a limited definition of "employing office." The form contains a section on the reverse side that is entitled "Where to File the Completed Form." The first sentence of that section states, "If insured as an employee, file the form <u>with the agency in which employed</u>." Aplt's App. at 81 (emphasis added). The form does not mention any requirement for filing with a regional office or with an office with "jurisdiction and responsibility for life insurance actions." <u>See</u> 5 C.F.R. § 870.104 (1995). Thus, an employee like Ms. Moore who wanted to change the beneficiaries of a

---

[4] The record before us does not contain an explanation of the duties and responsibilities of the various offices of the FAA as to life insurance matters. Thus, we are unable to determine precisely what responsibilities are vested in personnel officers at the Denver Flight Service Station and what responsibilities are vested in other offices–like the regional office in Renton, Washington. Nevertheless, in light of the instructions for filing given in the designation of beneficiary form itself, we need not determine precisely what responsibilities are vested in each office in order to resolve this case.

12

life insurance policy could reasonably read the form as directing her to file it with the personnel officer at the office where she was stationed.

In light of this provision of the designation of beneficiary form, we view this case as analogous to those cases holding that when the government reasonably construes an ambiguous statutory or regulatory term in a form that it provides to a citizen, the citizen should not be penalized by relying on the government's interpretation of the term. For example, in Shamsi v. I.N.S., 998 F.2d 761 (9th Cir. 1993), the court reversed the decision of the Board of Immigration Appeals dismissing an administrative appeal as untimely. The Board had dismissed the appeal because the appellant had not filed the notice of appeal with the Office of the Immigration Judge within the required time period. In reversing this decision, the Ninth Circuit observed that the notice of appeal form provided to the appellant had directed him to file the notice with the Immigration and Naturalization Service rather than with the Office of the Immigration Judge. The court said that "[t]he potential appellant who is furnished these instructions is justified in concluding that he or she need only file a notice of appeal with the INS office, where the fees are paid." Shamsi, 998 F.2d at 762.

Similarly, in Huang v. I.N.S., 47 F.3d 615, 616-18 (3d Cir. 1995), a preprinted form stated that parties seeking to appeal an order of an immigration judge would be allowed a certain period of time to file a notice of appeal. The

13

Third Circuit rejected the Board of Immigration Appeals' conclusion that a rule establishing an earlier deadline for filing the notice of appeal should control. The court reasoned that although the rule was ambiguous, "[t]he agency cannot advise participants in its process to read an ambiguous rule one way and, after they have acted, subject them to a more stringent requirement." Huang, 47 F.3d at 617 (footnote omitted); see also Vlaicu v. I.N.S., 998 F.2d 758, 760 (9th Cir. 1993) (concluding that "if a party is 'misled by the words or conduct of the court,' an appellate tribunal may have jurisdiction to hear an otherwise untimely appeal") (quoting Hernandez-Rivera v. I.N.S., 630 F.2d 1352, 1355 (9th Cir. 1980)).

Those decisions are applicable to the instant case. Here, as we have noted, the designation of beneficiary form directs employees to file the form "with the agency in which employed." See Aplt's App. at 81. The form provides no indication that the designation of beneficiary will not be effective when received by the office where the employee performs his or her day-to-day duties but instead will only be effective when the employer transfers the form to some central office. In light of the ambiguity of the term "employing office" in § 8705 and accompanying regulations, we conclude that employees reading the designation of beneficiary form may properly rely on the instructions given as to where to file the form (by filing it "with the agency in which employed"). To impose a more limited definition of the term "employing office," as Ms. Bush

14

now urges us to do, would allow the government to mislead employees about the requirements for changing beneficiaries. Such a result would be particularly detrimental to employees who are terminally ill and may have very little time to designate or change beneficiaries before dying, as was the case with Ms. Moore.

We find additional support for this conclusion in Fair v. Moore , 397 A.2d 976, 978 (D.C. Ct. App. 1979). In Fair, an employee of the Narcotics Treatment Administration of the District of Columbia Department of Human Resources executed a change of beneficiary form at the agency's personnel office. The form designated his sister as the beneficiary. The employee committed suicide two days later, and the designation of beneficiary form was not transmitted to the District of Columbia Accounting Office (the central office of the District of Columbia government) until three days after the suicide.

The District of Columbia Court of Appeals addressed the issue of whether the term "'employing office,' as used in § 8705(a), includes a personnel office of a District of Columbia agency, rather than being limited to the payroll office of District Accounting." Fair, 397 A.2d at 978. The court concluded that "section 8705(a) is satisfied when, as here, an employee leaves with his agency's personnel office a properly executed and witnessed official form supplied him by the government for the purpose of beneficiary designation." Id. The court reasoned that this construction was consistent with the purpose of the statute--"to

avoid the administrative difficulties and delay in disbursing benefits resulting from conflicting claims, under the group program, arising out of private, designating documents not in official possession at the time of death." Id. "This statutory purpose," it added, " is hardly fostered by a requirement that administrative processing to a central office must win a race with death. " Id. (emphasis added).

Although Fair does not discuss the definition of "employing office" in C.F.R. § 870.104 (1995), its reasoning is applicable here. Just as the employee in Fair, Ms. Moore delivered a signed and witnessed designation of beneficiary form to the responsible official from the office in which she worked. In these circumstances, we do not believe that giving effect to the June 20, 1995 form will engender the kind of "administrative difficulties and delay . . . arising out of private, designating documents," see id., that Congress sought to eliminate in enacting § 8705.

## III. CONCLUSION

For the reasons set forth above, the decision of the district court granting summary judgment in favor of the appellees Phyllis Bremer, Shirley Guthrie, and Victoria Van Heiden is affirmed.

16